883 F.2d 69
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dorothy MACKEY, Plaintiff-Appellee,
v.
JOHNSON MOTOR LINES RETIREMENT PLAN, Defendant-Appellant,
and
H.E. Henderson, Johnson Motor Lines, Inc., Defendants.
 No. 88-2148.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1989.
Decided Aug. 3, 1989.
Rehearing and Rehearing In Banc Denied Aug. 23, 1989.
 
 John G. Ferreira (Beth L. Balzer, Reed, Smith, Shaw & McClay on brief) for appellant.
 William Hathaway Sturges (Judith A. Starrett, Weinstein & Sturges, P.A. on brief) for appellee.
 Before WIDENER, MURNAGHAN, and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff, Dorothy Mackey, survives her husband, Charles T. Mackey, a former Johnson Motor Lines, Inc. ("Company") employee. She has claimed entitlement to a survivorship annuity benefit under the Johnson Motor Lines Retirement Plan ("Retirement Plan"). The Retirement Plan is a defined benefit plan within the meaning of ERISA, 29 U.S.C. Sec. 1002(2)(A). At his death on February 2, 1985, Charles T. Mackay was a vested participant in the Retirement Plan and, from October 25, 1979 until his death, he was on disability leave for which he received pay under the Company's Group Salary Continuation Program. Payments under the Retirement Plan had not yet commenced.
 
 
 2
 Until the beginning of 1985, an employee who participated in the Retirement Plan had to "elect-in" to survivorship benefits for his or her spouse. Although given the opportunity to do so, Charles T. Mackey never took any affirmative steps to opt in. Consequently, Charles T. Mackey had not provided for his wife's future in the event of his untimely death and the provisions of ERISA and the Retirement Plan did not operate to protect Dorothy Mackey from her husband's decision or oversight.
 
 
 3
 However, on August 23, 1984, Congress amended ERISA to change the "elect-in" approach. Retirement Equity Act of 1984, Pub.L. 98-397, 98 Stat. 1426 ("REA"). In doing so, Congress recognized that the "spouse should be involved in making choices with respect to retirement income on which the spouse may also rely...." See S.Rep. No. 57S, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code & Ad.News 2547, 2558. Under ERISA, as amended by REA, pension plans such as the Retirement Plan are required to provide a qualified preretirement survivor annuity ("QPSA") to the surviving spouse of a vested participant who dies before the annuity starting date. REA Sec. 103; 29 U.S.C. Sec. 1055(a)(2). Moreover, the QPSA provisions of the plan are obligatory unless the employee "elects-out" with the spouse's consent. REA Sec. 103; 29 U.S.C. Sec. 1055(c)(2). Such consent was never provided by Dorothy Mackey. Therefore, Dorothy Mackey would be entitled to the survivor annuity if we determine that REA applied to her claim.
 
 
 4
 Generally, the amendments became effective for the plan year beginning after December 31, 1984. REA Sec. 302. However, transitional rules applied to the period between enactment and commencement of operation of the law. REA Sec. 303. Under them, the preretirement survivorship terms would apply to and make Dorothy Mackey qualified for an annuity pension if Charles T. Mackey, as the vested plan participant, had met the requirement of having "at least 1 hour of service under the plan on or after the date of the enactment of this Act or have 1 hour of paid leave on or after such date of enactment." REA Sec. 303(c)(1) (emphasis added).
 
 
 5
 In a comprehensive, yet succinct, opinion, the district judge, James B. McMillan, determined that the requisite requirement for qualification in the transitional period had been met by either an hour of service or an hour of paid leave. Therefore, he awarded to Dorothy Mackey a qualified preretirement survivor annuity. For the reasons stated in Judge McMillan's convincing opinion with respect to an hour of paid leave, we affirm. Mackey v. Johnson Motor Lines, et al., United States District Court for the Western District of North Carolina, Charlotte Division, C-C-86-451-M (September 14, 1988).
 
 
 6
 We, therefore, need not reach or comment upon the district court's analysis and conclusion with respect to an hour of service. We note, however, that we are unpersuaded by appellant's contention that Charles Mackey did not satisfy the transitional rules because the 501 hour cap on hours of service credited under the Retirement Plan or the labor regulation at 26 C.F.R. Sec. 2530.200b-2(a)(2)(i) precluded his receiving credit for any hour of paid disability on or after August 23, 1984. First, the labor regulation does not mandate a cap on hours of service to be credited under a plan but requires that the plan recognize a minimum of 501 hours of service. Second, and more importantly, the 501 hour cap serves a technical, almost mathematical, function for determinations concerning years of service for eligibility and vesting considerations. Its purpose is irrelevant to the determination at issue here of whether a fully vested participant in the Retirement Plan had some objectively recognizable connection with the Company after the enactment date of REA to justify the application of the recent amendments. Mackey's receipt of disability payments after August 23, 1984 in any event satisfies the one hour of paid leave requirement.
 
 
 7
 AFFIRMED.